# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BRANDON BIBBS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:16CV00056 ERW |
| | ) |
| CINDY GRIFFITH, | ) |
| | ) |
| Respondent(s). | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Brandon Bibb's Motion for an Order of Stay and Abeyance of Claims Not Preserved in Missouri State Courts [1] and Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [2].

## I. BACKGROUND

Petitioner Brandon Bibbs ("Petitioner") was convicted, by jury, of statutory rape in the first degree, two counts of statutory sodomy in the first degree, and kidnapping. The Circuit Court of St. Louis City found Petitioner to be a prior and persistent offender and sentenced him to life imprisonment on each count, to be served consecutively. Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, and his convictions were affirmed. Petitioner filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court denied Petitioner's claims and the motion court's decision was affirmed by the appellate court.

The Missouri Court of Appeals, Eastern District, described the facts of Petitioner's convictions as follows:

> On the evening of October 19, 2010, defendant obtained a ride in a car driven by the mother of the ten-year-old victim, N.D. The mother mentioned that the victim

was in the car. The mother pulled over, she and defendant talked, and defendant made her get out of the car against her will. He got in the driver's seat and drove away. When the victim woke up, she saw defendant looking at her. Defendant got in the backseat, asked the victim her name and age, and raped and sodomized the victim. Defendant later returned to the driver's seat, drove for a few minutes, and left the car on foot.

ECF No. 13-5, pg. 2.[1]

## II. STANDARD

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. *Id.* at § 2254(e)(1).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). An unreasonable application of clearly established Supreme Court precedent is found where the

---

[1] These facts are taken directly from the Court of Appeals' Memorandum affirming Petitioner's conviction on direct appeal. A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e).

state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id*.

## III. DISCUSSION

Petitioner asserts the following five claims in his Petition: (1) the evidence introduced at trial is insufficient to establish Petitioner had sexual intercourse with the victim; (2) the trial court erred in denying a motion for directed verdict as to the kidnapping charge; (3) the trial court plainly erred in submitting an instruction to the jury for kidnapping; (4) his appellate counsel was ineffective for failing to raise on appeal that the trial court erred when it made a comment during closing arguments on the evidence; and (5) his trial counsel was ineffective for failing to object to the State's closing argument about Petitioner's failure to tell the police about his alibi defense. The Court will address each claim as follows.

### a. *Claim One – Insufficient Evidence, Statutory Rape*

In his first claim, Petitioner asserts the trial court erred in denying his motion for a directed verdict at the close of evidence on Count I (statutory rape) because the State failed to prove beyond a reasonable doubt Petitioner had sexual intercourse with the victim. Petitioner alleges the evidence at trial failed to prove his penis penetrated the victim's vagina. Petitioner raised this claim in his direct appeal. The Missouri Court of Appeals held:

> Section 566.032.1 provides: "A person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." Sexual intercourse is statutorily defined as "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results." Section 566.010(4). The victim's age is not in dispute; the only element contested by defendant is penetration of the female sex organ by the male sex organ. Any penetration of the female sex organ by the male sex organ, however slight, falls within the General Assembly's definition of sexual

> intercourse. "The female sexual organs include a woman's vulva and external genitals."
>
> The victim did testify that defendant "tried to put his private part inside of me and I started screaming, so he put the blanket over my face." However, she also testified that when he tried to put his penis insider her, it "hurt really, really badly." Further, there was expert evidence that the victim had a tear or laceration on the bottom of her hymen along with fresh blood, which indicated "actual penetration, something actually tore the hymen at the bottom."
>
> There was sufficient evidence at trial for a reasonable juror to find that defendant penetrated the victim's vagina with his penis. Point one is denied.

ECF No. 13-5, pgs. 3-4 (internal citations omitted).

When reviewing a sufficiency of the evidence claim, the question before the federal court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). This is the exact standard the appellate court applied in reviewing Petitioner's claim on direct appeal.

Missouri Revised Statute § 566.032, in effect at the time of Petitioner's crimes, states: "A person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." Missouri Revised Statute § 566.010(4) defines "sexual intercourse" as "any penetration, however slight, of the female sex organ by the male sex organ, whether or not emission results."

At trial, the victim testified "he tried to put his private part inside of me and I started screaming." Tr. pg. 274:14-16.[2] She further testified he put his "private part" "in front of me where I use the bathroom at." Tr. pg. 274:17-19. Finally, she stated "it hurt really, really badly." Tr. pg. 276:11. Testimony was also introduced at trial from the emergency room attending doctor, Steve Laffey, who examined the victim. He stated she had tearing in her vagina and fresh

---

[2] Tr. refers to the trial transcript, filed at ECF No. 13-1.

4

blood which indicates penetrating trauma. Tr. pgs. 354:23-355:5. He also testified the tearing on the bottom of her vagina was consistent with "actual penetration, something actually tore the hymen at the bottom." Tr. pg. 355:17-18.

With this evidence, a rational trier of fact could have found the essential elements of statutory rape beyond a reasonable doubt. This evidence was all cited to by the appellate court which correctly applied established Supreme Court precedent in affirming Petitioner's convictions. The appellate court also made a reasonable determination of the facts in light of the evidence presented at trial. Therefore, the appellate court's decision on direct appeal is entitled to deference. 28 U.S.C. § 2254(d). The Court will deny Petitioner's first claim.

  *b. Claim Two – Insufficient Evidence, Kidnapping*

In his second claim, Petitioner asserts the trial court erred in denying Petitioner's motion for directed verdict at the close of all evidence on Count IV (kidnapping) because the State failed to prove Petitioner unlawfully removed the victim without consent from her mother. Petitioner argues "the State's evidence failed to establish Petitioner did not have Ms. Meeks' consent when he removed the car from the 4500 block of Mary while N.D. slept in the backseat." He also alleges there was insufficient evidence presented to prove he took the car with the intent to commit statutory rape against the victim. Petitioner raised this claim in his direct appeal, and it was denied by the appellate court.

  The Missouri Court of Appeals held:

> A person commits the crime of kidnapping if he or she unlawfully removes another without his or her consent from the place where he or she is found or unlawfully confines another without his or her consent for a substantial period, for the purpose of . . . [f]acilitating the commission of any felony or flight thereafter . . ." Section 565.110.1. Defendant was charged by indictment with "unlawfully remov[ing] N.D. without her consent from 4531 Mary, the place where she was found by defendant for the purpose of facilitating the commission of the felony of Statutory Rape 1st Degree of N.D."

5

> There is sufficient evidence from which a reasonable juror could find that defendant unlawfully removed the victim without consent from the place that the mother had parked her car for the purpose of committing a felony. First, the victim did not consent. Section 565.100.3 (2000), which applies to kidnapping, provides that "[a] person is deemed incapable of consent if he [or she] is (1) Less than fourteen years old." Accordingly, the victim was incapable of consenting to being moved because she was only ten years old.
>
> Second, when defendant forced the mother out of the car and drove away, he knew that the victim was in the backseat. As soon as the victim awoke, he raped her. This was sufficient evidence to support an inference that defendant drove away in the car with the victim in the backseat without her mother to effectuate the criminal enterprise of committing statutory rape. Point two is denied.

ECF No. 13-5, pg. 5.

As the appellate court stated, the victim could not consent to being taken by Petitioner because she was under the age of fourteen at the time. Mo. Rev. Stat. § 565.100.3 (2000). Thus, it does not matter whether the victim's mother consented or not. It is also reasonable for the jury to infer from the evidence Petitioner took the car, with the victim in it, for the purpose of committing rape. The victim testified that when she woke up in the car, Petitioner was looking at her and immediately got into the back seat. Tr. pg. 271:7-12. After asking her name and age, she testified Petitioner opened her legs and took off her underwear. Tr. pg. 272:2-3.

With this evidence, a rational trier of fact could have found the essential elements of kidnapping beyond a reasonable doubt. This evidence was all cited to by the appellate court who correctly applied established Supreme Court precedent in affirming Petitioner's convictions. The appellate court also made a reasonable determination of the facts in light of the evidence presented at trial. Therefore, the appellate court's decision on direct appeal is entitled to deference. 28 U.S.C. § 2254(d). The Court will deny Petitioner's second claim.

    c.    *Claim Three – Kidnapping Jury Instruction*

In his third claim for relief, Petitioner asserts the trial court plainly erred in submitting the verdict directing instruction for kidnapping without the words "unlawfully" and "without consent."

Petitioner raised this claim in his direct appeal but the appellate court limited its review to plain error because Petitioner did not object to the jury instruction at trial. ECF No. 13-5, pg. 6. The appellate court further held there were no "facially substantial grounds to warrant plain error review" because the kidnapping jury instruction was patterned on Missouri-Approved Instruction 319.24, which does not contain the words "unlawfully" or "without consent." *Id*.

Petitioner's claim is not cognizable in federal court. Whether an instruction is incorrect under state law is not a basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71 (1991). The only question for the Court is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id*. at 72. There is no evidence presented, nor is there any evidence in the trial transcript, the instruction so infected the entire trial that Petitioner's conviction violates due process. This claim will be denied.

  d.  *Claim Four – Ineffective Assistance of Appellate Counsel*

In his fourth claim, Petitioner asserts he was denied effective assistance of counsel when his appellate counsel failed to raise a claim on direct appeal the trial court erred when it made comments during closing arguments on the evidence. Specifically, Petitioner alleges the trial court "failed to read the entirety of the cross-examination in which N.D. testified that the assailant was almost bald, meaning he had hair around the sides and was bald on top, which did not match a feature of Petitioner." Petitioner raised this claim in his PCR motion and in his appeal of his PCR motion.

In concluding there was no merit to Petitioner's claim, the PCR motion court made the following conclusions of fact:

> 4. N.D. testified at movant's trial that the perpetrator was almost bald. She said he was bald on top but had hair around the sides.
>
> 6. Defense counsel said during his closing argument that N.D. described the assailant as bald. The prosecutor objected and said defense counsel was misstating the evidence. The Court sustained the objections, and then at the end of counsel's closing argument the Court said her notes reflected that N.D. said the assailant was sort of bald.
>
> 7. Maleaner Harvey testified at the evidentiary hearing that she discussed movant's appeal with him a couple of times and she said she would have discussed with him which claims she thought were the strongest. She did not raise any issue regarding what occurred during defense counsel's closing argument because though the statement by defense counsel that the perpetrator was bald was a misstatement as the witness said he was almost bald. She thought the prosecutor's objection had merit and she did not raise the issue because she did not think the convictions would have been reversed even if the Court erred, in light of the evidence against movant. She said she thought she had three stronger grounds to raise.

ECF No. 13-6, pgs. 43-44 (internal citations omitted). Using the motion court's findings of fact, the PCR appeals court held:

> Appellate counsel briefs need not and should not raise every nonfrivolous claim, but rather, may select from among them in order to maximize the likelihood of success on appeal. The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. The United States Supreme Court noted that "it is still possible to bring a Strickland claim based on a counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." To show counsel acted unreasonably in failing to raise a claim, the petitioner must show that the particular nonfrivolous issue was clearly stronger than issues that counsel did present.
>
> To ensure that a defendant receives a fair trial, a trial judge must maintain absolute impartiality during criminal proceedings. In the trial of any criminal case the court shall not, in the presence of the jury, sum up or comment on the evidence. A question or comment from a trial judge must not express his or her opinion of evidence in the case. This does not mean, however, that the judge may not correct counsel when necessary, as long as it is not done in a contemptuous manner. Neither does it mean that a judge may not summarize evidence in explanation of a ruling, as long as it is not a statement of the facts as a matter of

law. The factors used to determine the propriety of any comment include whether the trial judge volunteered the comment, whether the comment was made in response to an objection as part of the court's ruling, whether the comment was made in the jury's presence, and whether the jury could have construed the comment to prejudice the defendant.

Here, the trial court's comment that the statement from the victim was "sort of bald," according to her notes, was a summary of the victim's testimony in an attempt to explain its ruling on the State's objection to defense counsel's statement in closing argument that the victim said her perpetrator was bald. When the State objected that defense counsel was misstating the testimony, the trial court stated that it will instruct the jurors to rely on the evidence as they recall it. While we certainly do not encourage trial courts to make comments during arguments, we find the trial court's statement here was not biased or hostile and the jury was instructed to rely on the evidence as they recalled it. Although said in the presence of the jury, the court's statement cannot be construed to prejudice the defendant. A clarification of the term "bald" to "sort of bald" does not imply negative connotations about Movant or his defense counsel. Appellate counsel cannot be ineffective for failing to raise a non-meritorious claim on appeal.

Moreover, Movant failed to show his appellate counsel's action was not reasonable strategy. Reasonable strategy cannot be ineffective assistance of counsel. There is a strong presumption that counsel's conduct falls within the wide range of professional assistance. Appellate counsel testified that she considered raising this issue on appeal but she did not actually do it because it appeared defense counsel did misstate the victim's testimony. She also said she did not think that the claim would have been meritorious and she thought other issues were stronger. This was reasonable strategy on appeal. Likewise, we accept the motion court's finding that trial counsel's testimony was credible.

ECF No. 5-7 (internal citations and quotations omitted).

The PCR appellate court's decision is entitled to deference. 28 U.S.C. § 2244(d). In filing an appellate brief, counsel may select from among the nonfrivolous claims to "maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). The process of focusing on the most effective arguments on appeal "is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). Petitioner's appellate counsel testified she believed she had three stronger claims to raise on appeal and did not believe the claim regarding the trial court's statements during closing arguments would have resulted in a reversal of Petitioner's conviction. The PCR appellate court's decision is not contrary to or an

9

unreasonable application of clearly established Supreme Court precedent nor was it based on an unreasonable determination of the facts in light of the evidence presented. This claim will be denied.

### e. Claim Five – Ineffective Assistance of Trial Counsel

In his final claim, Petitioner asserts his trial counsel was ineffective for failing to object during the State's closing arguments about Petitioner's failure to tell the police his alibi defense when he was originally questioned. Petitioner argues the improper arguments violated his right to silence and permitted the State to argue his silence was evidence of his guilt. This claim was raised in Petitioner's PCR motion and on appeal of the denial of his PCR motion.

In concluding there was no merit to Petitioner's claim, the PCR motion court made the following conclusions of fact:

> 5. During her closing argument the prosecutor said the following:
>
> Oops, well, maybe we were cellmates who had all of our police reports and all of the CAC summaries and the lab reports and the descriptions and all of that. And maybe we could talk about things so I could try to explain away my DNA, because I couldn't explain it to the detectives when I was interviewed. I had no story, so now two years later, now I have a story.
>
> 8. Steven Lewis represented movant at trial. He testified at the evidentiary hearing that he did not object to the prosecutor's statement in her closing argument because he viewed the statement as a comment on movant and another person being cellmates and making up a story. Mr. Lewis said movant did speak with the police and said he did not do the crimes. Mr. Lewis said movant told the police when confronted with DNA evidence that he could not explain it.
>
> 9. . . . During cross-examination [Mr. Bibbs] acknowledged that he made a statement to the police.

ECF No. 13-6, pgs. 43-45. Using the motion court's findings of fact, the PCR appeals court held:

> Here, Movant testified that he and Raymond English had been cell mates while Movant was awaiting trial. Movant said he had access to the police reports, law reports, a written summary of the victim's statement, and the victim's deposition. He said the file included descriptions of the perpetrator. Movant said that when he was interviewed by the police he could not explain how his DNA got on the

victim. He also denied being in the victim's car. Raymond English also testified for Movant.

During closing argument, Movant argued that his DNA was on the victim's neck and in her mouth as a result of her "playing" with the crack pipe he left in the car. During Movant's closing argument, his defense attorney said the following:

. . . [T]hey had all this testimony about whether or not [Movant] and Raymond were cell mates. If they were going to cook up some story, wouldn't they have Raymond come in here and say, "Well, I saw the man run out of the car, and I remember it was May 20th, and I remember he ran between a few houses," or "Yeah, I remember. I called [Movant] on his cell phone," or made up some story where he was an eyewitness to something that did happen?

During rebuttal closing argument, then, the State commented in response:

Oops, well, maybe we were cellmates who had all of our police reports and all of the CAC summaries and the lab reports and the descriptions and all of that. And maybe we could talk about things so I could try to explain away my DNA, because I couldn't explain it to the detectives when I was interviewed. I had no story, so now two years later, now I have a story.

Trial counsel did not object to the State's argument.

. . .

Here, we find the State's comment was in response to Movant's argument that his DNA found on victim was explained by the victim "playing" with the crack pipe that Movant left in the car. The State suggested that Movant fabricated this explanation because earlier, at a time when he waived his Miranda rights and was willing to give a statement to the police, he simply could not think of a good explanation for the DNA. The State was not highlighting Movant's silence, but his dumbfounded lack of response then, as opposed to his new story at trial. The State suggested that Movant discussed the issue with his cell mate, who coincidentally also testified in Movant's defense. A prosecutor may argue any inference from the evidence that he or she believes in good faith was justified. Moreover, the State's comment was brief and not repetitive.

After a full review of the record, we find the State's rebuttal closing argument did not have a decisive effect on Movant's conviction. The motion court did not err in denying Movant's motion for post-conviction relief . . .

ECF No. 13-9, pgs. 8-11 (internal citations omitted).

The PCR appellate court's decision is entitled to deference. 28 U.S.C. § 2244(d). To establish his trial counsel was ineffective for failing to object to a prosecutor's closing argument,

Petitioner must establish his counsel's performance was deficient and if not for his counsel's failure to object, the result of the proceeding would have been different. *Middleton v. Roper*, 455 F.3d 838, 849 (8th Cir. 2006). Habeas relief will only be granted if "the prosecutor's comments were so inappropriate as to make the trial fundamentally unfair and the resulting conviction a denial of due process." *Id*. Petitioner cannot establish either prong of the analysis. His counsel was not ineffective for failing to object to the prosecutor's rebuttal closing argument because there was not a valid objection to be made. The prosecutor's comments were proper rebuttal to the argument raised during Petitioner's closing arguments. Furthermore, Petitioner does not establish he would have been acquitted had his counsel objected to the argument. The PCR appellate court's decision to deny Petitioner's claim is not contrary to or an unreasonable application of clearly established Supreme Court precedent nor was it based on an unreasonable determination of the facts in light of the evidence presented. This claim will be denied.

IV.  **CERTIFICATE OF APPEALABILITY**

The Court finds Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner's § 2254 Motion.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Petitioner Brandon Bibb's Motion for an Order of Stay and Abeyance of Claims Not Preserved in Missouri State Courts [1] is **DENIED**.

**IT IS FURTHER ORDERED** that Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [2] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Brandon Bibb's claims are **DISMISSED, with prejudice**.

So Ordered this 1st day of February, 2019.

*E. Richard Webber* (signature)

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**